## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KYLE RAINEY,                    :
    **Plaintiff**            :
                :        **No. 1:23-cv-00055**
    **v.**                   :
                :        **(Judge Rambo)**
KEVIN RANSOM, et al.,           :
    **Defendants**           :

## MEMORANDUM

Pro se Plaintiff Kyle Rainey ("Plaintiff") is a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He has commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), claiming that Defendants violated his constitutional rights while incarcerated at State Correctional Institution Dallas ("SCI Dallas") in Dallas, Pennsylvania.  In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint.  For the reasons set forth below, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.  However, the Court will grant Plaintiff leave to file an amended complaint.[2]

---

[1]  See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

[2]  Also pending before the Court are Plaintiff's various motions. (Doc. Nos. 4, 5, 9, 13.)  The Court will address these motions herein.

## I.   BACKGROUND

On January 11, 2023, Plaintiff filed his Section 1983 complaint against the following Defendants all of whom appear to have worked at SCI Dallas during the period of time relevant to his claims: Superintendent Kevin Ransom; Deputy Superintendent Richardo Contreras; Deputy Superintendent Jason Bohinksi; Unit Manager Frank Depiero; Major of Unit Managers Michael Goyne; Counselor Richard Keller; Correctional Officer McGlynn; Correctional Officer Staples; Lieutenant Conrade; Hearing Examiner Charlie McKeown; Lieutenant Flick; Captain Daiter; Psychiatrist Gina Harris; "Psychological" C. Reed; and Psychology Manager Dr. N. Ashton.  (Doc. No. 1 at 12.)  In addition to his complaint, Plaintiff has also filed a motion for leave to proceed in forma pauperis, as well as his prisoner trust fund account statement.  (Doc. Nos. 9, 10.)  The Court, having reviewed Plaintiff's motion and trust fund account statement, will grant him leave to proceed in forma pauperis and will deem his complaint filed.[3]

The gravamen of Plaintiff's complaint is that "several staff member's [sic]" at SCI Dallas have ignored the "abuse, trauma, and fear's [sic]" that he continues to suffer from as a result of "juvenile placement."  (Doc. No. 1 at 15.)  Plaintiff claims

---

[3]  Plaintiff also filed a motion seeking to invoke the imminent danger exception. (Doc. No. 4.)  Because the Court will grant Plaintiff in forma pauperis status (Doc. No. 9), the Court will deny, as moot, his motion seeking to invoke the imminent danger exception.

that this prior abuse should prohibit staff members from placing him in double prison cells.   (Id. at 15-18.)  In support, Plaintiff has set forth a number of discrete events spanning from February 17, 2022, to April 5, 2022.  (Id.)  Most of these events have been discussed in abbreviated fashion and have not been fully developed in the complaint.  Nevertheless, the Court has done its best to recount Plaintiff's allegations here.

At the outset of his complaint, Plaintiff asserts that he reported his prior abuse in juvenile placement to his counselor, Defendant Keller, because he was having a lot nightmares. (Id.) Nevertheless, Plaintiff claims that, on February 17, 2022, Defendant Depiero moved him out of his single cell and placed him in a double cell with a cellmate. (Id.) Plaintiff further claims that, when he advised Defendant McGlynn of his prior abuse, "staff member's [sic]" claimed that "A.C. Status, i.e., Administration Custody . . . did not exist," which Plaintiff asserts is "a lie."  (Id.) More specifically, Plaintiff asserts that, under DC-ADM 801, he can be transferred from general population to A.C. Status if he is a danger to himself and has requested and been granted "self[-]confinement."  (Id.)  Notably, Plaintiff does not allege that he is a danger to himself.

In addition, Plaintiff generally alleges that Defendant Conrade ignored his "pleading's [sic]" and ordered Defendant McGlynn to write him up.  (Id. at 16.) Plaintiff appears to allege that, as a result of this write-up, he was sanctioned by

Defendant McKeown on February 22, 2022, to thirty (30) days disciplinary custody (Id.)  In connection with these allegations, Plaintiff claims that he subsequently filed a grievance against Defendant Conrade, but that it was "rejected[.]"  (Id.)  Plaintiff also claims that his thirty (30) day sanction in disciplinary custody was reduced to "cell restriction" by Defendant Ransom on March 4, 2022.  (Id.)

Plaintiff alleges, however, that, on March 7, 2022, Defendant Depiero returned from the weekend and "once again ignored Plaintiff's abuse and 'PREA' status and placed [him] on the moving report, i.e., move to G-Blk double cell, with a cell-mate."  (Id.)  In support, Plaintiff asserts that Defendant Staples  had informed Plaintiff that he was on the moving report.  (Id.)  Plaintiff further asserts that, although he tried to explain his concerns to Defendant Staples, those concerns were ignored, and he received another write-up, which caused him to be returned to the RHU.  (Id.)  Plaintiff claims that Defendant Staples' write-up was dismissed without prejudice, but "re-written" on March 16, 2022.  (Id.)  Plaintiff further claims that his "pleading's [sic] went ignored before [Defendant] McKeown once again, i.e., Plaintiff's 'PREA' status."  (Id.)

Plaintiff appears to assert that, around this time, Defendant Klick ordered that he be moved out of his single cell on "K-Blk, i.e., 'RHU' down the range in a double cell, with a cell-mate, [and] another misconduct followed."  (Id. at 17.)  Plaintiff also asserts that Defendant McKeown found him guilty once again.  (Id.)

In addition, Plaintiff alleges that, on April 5, 2022, Defendant Depiero inflicted "additional emotional threat's [sic] and trauma during the morning yard, between 8:00 to 9:00 a.m.[,]" when "[t]his Defendant stated to Plaintiff, you are scheduled to be released today and I am going to send you to C-Block or G-Blk with the wolf's [sic] and I hope you get abused again, like you did in juvenile placement." (Id. at 18.)

Finally, Plaintiff broadly contends that he "was placed in the 'POR' on suicide watch" and that "[a]ll Psychology, Psychiatrist, and Psychological named (Defendant's) [sic] [have] done nothing to help [him]." (Id. at 17.) Plaintiff also broadly contends that Defendants Ransom, Contreras, and Bohinksi have "done nothing but inflict emotional pain and suffering against [him] and continue to act cruel an[d] unusual[.]" (Id.)

In connection with all of these allegations, Plaintiff claims that Defendants violated "PREA[,]" as well as his rights under the Eighth and Fourteenth Amendments to the United States Constitution. (Id. at 19.) As for relief, Plaintiff seeks declaratory, injunctive, and monetary relief from Defendants. (Id. at 20-21.)

On April 5, 2023, after Plaintiff filed his complaint, he filed a motion for a temporary restraining order and preliminary injunction. (Doc. No. 13.) As reflected by the Court's docket, however, Plaintiff has not filed a brief in support of his motion, and the time period for doing so has since passed.

5

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of <u>pro se</u> prisoner litigation, a district court must be mindful that a document filed <u>pro se</u> "is to be liberally construed." <u>See Estelle</u>, 429 U.S. at 106. A <u>pro se</u> complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" <u>See Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.   DISCUSSION

Plaintiff has filed his complaint pursuant to the provisions of Section 1983, claiming that Defendants violated his constitutional rights while he has been incarcerated at SCI Dallas. (Doc. No. 1.) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>See id.</u> Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>See Shuman v. Penn Manor School Dist.</u>, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a

remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

## A.    Personal Involvement in a Section 1983 Action

In order for liability to attach under Section 1983, a plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). And "[a] plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." See Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)). Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

### 1. Defendants Goyne and Daiter

There is a complete absence of allegations in Plaintiff's complaint that would give rise to a plausible inference that Defendants Goyne and Daiter were personally involved in any asserted deprivation of Plaintiff's constitutionally protected rights. While Defendants Goyne and Daiter have been named as defendants in the complaint (Doc. No. 1 at 12), they have not been mentioned anywhere else in the body of the complaint. Without such allegations of personal involvement, liability cannot be imposed against these Defendants under Section 1983. Thus, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants Goyne or Daiter. As a result, Plaintiff's claims against these Defendants will be dismissed.

### 2. Defendants Harris, Reed, Ashton, Ransom, Contreras, Bohinski, and Keller

In his complaint, Plaintiff alleges only broad and conclusory allegations against Defendants Harris, Reed, Ashton, Ransom, Contreras, Bohinski, and Keller. More specifically, Plaintiff alleges as follows: that Defendants Harris, Reed, and Ashton have "done nothing to help [him]" (Doc. No. 1 at 17); that Defendants Ransom, Contreras, and Bohinksi have "done nothing but inflict emotional pain and suffering against [him] and continue to act cruel an[d] unusual . . . " (id.); and that he merely reported the abuse he previously suffered in juvenile placement to his counselor, Defendant Keller (id. at 15).

The Court finds that these allegations do not show the personal involvement of Defendants Harris, Reed, Ashton, Ransom, Contreras, Bohinski, and Keller because they have not described their participation in or their actual knowledge of and acquiescence in the alleged wrongful conduct. See Chavarriaga, 806 F.3d at 222; Dooley, 957 F.3d at 374. Moreover, the law is clear that such broad and conclusory allegations are not entitled to the assumption of truth. See Ashcroft, 556 U.S. at 679 (stating that "conclusions[ ] are not entitled to the assumption of truth[,]" and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that while a court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions" (citation omitted)). As a result, the Court concludes that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants Harris, Reed, Ashton, Ransom, Contreras, Bohinski, and Keller for failure to allege their personal involvement in this action. As a result, Plaintiff's Section 1983 claims against these Defendants will be dismissed.

**B.      Rule 8 of the Federal Rules of Civil Procedure**

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  <u>See</u> Fed. R. Civ. P. 8(a)(2).  This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest.  <u>See</u> <u>Erickson</u>, 551 U.S. at 93.  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] has to show such an entitlement with its facts."  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009) (citation and internal quotation marks omitted).

Here, the Court finds that Plaintiff's complaint fails to meet this basic pleading standard.  Although the complaint is somewhat concise, Plaintiff's complaint names fifteen (15) different employees at SCI Dallas and pertains to a number of events occurring between February 17, 2022, and April 5, 2022.  (Doc. No. 1 at 15-18.) Plaintiff's complaint does not identify, however, the specific legal theories supporting each of these events and, instead, only generally claims that Defendants violated "PREA" and the Eighth and Fourteenth Amendments to the United States Constitution.  (<u>Id.</u> at 19.)  As a result, Plaintiff has not clearly linked these general claims to the various events asserted in his complaint.

Additionally, and as discussed more fully above, Plaintiff's complaint does not show how numerous Defendants were personally involved in the asserted

11

wrongdoing. As a result, the Court has been left—and Defendants, if served, would also be left—to speculate as to what alleged conduct on their part gives rise to any deprivations of Plaintiff's federally protected rights. See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (stating that, "[n]aturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8" (citations and internal quotation marks omitted)); Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011) (unpublished) (affirming district court's dismissal of a complaint where it "defie[d] any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted [a cause of action]").

Finally, although Plaintiff's complaint has provided some factual detail concerning his assertion that Defendants disregarded his request to be single-celled, see, e.g., (Doc. No. 1 at 15, 16, 18), the Court is still unable to discern how, exactly, he seeks to hold the various prison employees and medical defendants at SCI Dallas liable under either the Eighth or Fourteenth Amendments. Indeed, Plaintiff only asserts facts that he faced prior abuse in juvenile placement. He does not assert any facts that, at SCI Dallas, he has faced a risk of imminent harm or danger to his health or safety or that any of the Defendants disregarded such a risk of harm or danger, as required to state an Eighth Amendment violation. See Farmer v. Brennan, 511 U.S. 825, 847 (1994) (explaining that "[a] prison official may be held liable under the

Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it"). And, in a similar vein, the allegations in Plaintiff's complaint are not sufficiently developed to provide Defendants with notice of the grounds upon which his Fourteenth Amendment claim rests. See Erickson, 551 U.S. at 93 (explaining that a complaint must provide the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest); Fowler, 578 F.3d at 211 (stating that "a complaint must do more than allege the plaintiff's entitlement to relief[; it] has to show such an entitlement with its facts" (citation and internal quotation marks omitted)).

Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint does not provide fair notice of his Section 1983 claims or the grounds upon which those claims rest and, thus, it does not satisfy Rule 8 of the Federal Rules of Civil Procedure. As a result, Plaintiff's Section 1983 claims are subject to dismissal for failure to satisfy Rule 8.

C.    **PREA**

In his complaint, Plaintiff alleges, albeit broadly, that Defendants have violated "PREA." (Doc. No. 1 at 19.) To the extent that Plaintiff seeks to assert any claims pursuant to the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601, et seq., which is commonly referred to as PREA, the Court finds that Plaintiff's claims are without legal merit. Simply stated, this Act does not provide a private right of action and, as a result, Plaintiff is prohibited from asserting a claim pursuant to this Act. As a result, to the extent that Plaintiff asserts stand-alone PREA claims, his claims will be dismissed. See, e.g., Johnakin v. Drosdak, No. 22-cv-02575, 2022 WL 2651969, at *5 (E.D. Pa. July 8, 2022) (stating that, "[w]hile the PREA was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action" (citation and internal quotation marks omitted)); Williams v. Wetzel, 827 F. App'x 158, 162 (3d Cir. 2020) (unpublished) (concluding that the district court did not err in rejecting the plaintiff's stand-alone civil claims under the PREA, because the plaintiff had failed to identify a private right of action); Krieg v. Steele, 599 F. App'x 231, 232 (5th Cir. 2015) (unpublished) (explaining that "[i]nsofar as [the prisoner-plaintiff] argues that his rights under the Prison Rape Elimination Act of 2003 . . . were violated, other courts addressing this issue have found that the PREA does not establish a private

14

cause of action for allegations of prison rape" (citations omitted)); <u>Frederick v.</u> <u>Snyder Cnty. Prison</u>, No. 18-cv-00707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (stating that, "[t]o the extent that Plaintiff attempts to raise a claim pursuant to the PREA, this claim must fail [because] [t]he PREA does not provide a private right of action and Plaintiff is thus prohibited from asserting a claim pursuant to the PREA" (citations omitted)).

### D. Leave to Amend

The Court must next determine whether Plaintiff should be granted leave to file an amended complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. <u>See Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>See Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" <u>See</u> <u>id.</u> The Court may also deny leave to amend where the proposed amendment

would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that it would be futile to grant Plaintiff leave to amend his PREA claims because, as discussed above, this Act does not create a private right of action. However, the Court cannot say that granting Plaintiff leave to amend his Section 1983 claims against Defendants would be futile. Thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies of his Section 1983 claims, and specifically, his claims asserted under the Eighth and Fourteenth Amendments.

Plaintiff is advised that his amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

**E.    Motion for Temporary Restraining Order and Preliminary Injunction**

On April 5, 2023, after Plaintiff filed his complaint, he filed a motion for a temporary restraining order and preliminary injunction. (Doc. No. 13.) Plaintiff has failed to file a brief in support of this motion, as required by Local Rule 7.5 of the

Court's Local Rules. <u>See</u> M.D. Pa. L.R. 7.5 (providing as follows: "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion . . . [i]f a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn"). As a result, the Court will deem Plaintiff's motion withdrawn.

### F.      Motion for the Appointment of Counsel

Finally, the Court addresses Plaintiff's pending motion seeking the appointment of counsel. (Doc. No. 5.) The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1). <u>See</u> <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted). The United States Court of Appeals for the Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant. <u>See</u> <u>Houser v. Folino</u>, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law. <u>See</u> <u>Montgomery</u>, 294 F.3d at 498-99 (citations omitted). Second, if the district court determines that the plaintiff's case has some arguable merit in fact and law, then the district court is to

consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  See Houser, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress.  They are not exhaustive, nor are they each always essential").  Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted.  See Tabron, 6 F.3d at 157-58.

Having reviewed Plaintiff's motion, the Court concludes that the appointment of counsel is not warranted at this time.  Under the two (2)-step process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel.  See Houser, 927 F.3d at 697.  Here, until Plaintiff files an amended complaint, the Court cannot meaningfully consider whether Plaintiff's case has

arguable merit in fact and law.  Even if the Court were to assume, however, that any of the claims raised by Plaintiff have arguable merit, the Court would still deny his motion for the appointment of counsel at this time.

While the Court appreciates the fact that Plaintiff will certainly face challenges in this litigation as he is currently incarcerated at SCI Dallas (Doc. No. 5 at 2), the Court finds that he has, nevertheless, demonstrated the apparent ability to read, write, and understand English, as well as the apparent ability to litigate this action pro se, as illustrated by the filing of his complaint, his motion for leave to proceed in forma pauperis, his motion seeking a temporary restraining order and preliminary injunction, and his instant motion seeking the appointment of counsel. (Doc. Nos. 1, 5, 9, 13.)   Moreover, although Plaintiff seems to suggest that he has raised complex legal issues in his complaint (Doc. No. 5 at 2-3), the Court notes that this case is at a very early stage and that the filings submitted thus far do not implicate complicated legal issues.  Accordingly, given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v. Jeffes, 777 F.2d 143, 147-48 (3d Cir. 1985), coupled with his apparent ability to litigate this action, the Court concludes that the appointment of counsel is not warranted at this time.

Additionally, with respect to Plaintiff's concerns regarding limited legal resources at SCI Dallas (Doc. No. 5 at 2), the Court notes that, if he were to need extensions of time to respond to filings and Orders in this matter, which would

require a response from him, then he need only request an extension from the Court at the appropriate time.  And, finally in the event that future proceedings would otherwise demonstrate the need for counsel, then the Court may reconsider this matter either <u>sua</u> <u>sponte</u> or upon a motion properly filed by Plaintiff.

## IV.  CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will dismiss Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  However, the Court will grant Plaintiff leave to file an amended complaint.  In addition, the Court will deem his motion for a temporary restraining order and preliminary injunction withdrawn, and the Court will deny without prejudice his motion seeking the appointment of counsel.  An appropriate Order follows.


Dated: May 9, 2023                      s/ Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge